IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PAMELA S. THOMPSON, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 11-4126-KHV |
| COMCARE, P.A., ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff filed this action against her former employer, Comcare, P.A., alleging discriminatory termination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA") and the Kansas Act Against Discrimination, K.S.A. § 44-1001 et seq.  Plaintiff asserts that defendant terminated her employment because of age.  Defendant argues that it terminated plaintiff's employment because she was not performing her position in a satisfactory manner.  This matter comes before the Court on defendant's Motion For Summary Judgment (Doc. #18) filed August 22, 2012.  For the following reasons, the Court overrules defendant's motion.

**Legal Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993).  A "genuine" factual dispute is one "on which the jury could reasonably find for the plaintiff," and requires more than a mere scintilla of evidence.  Liberty Lobby, 477 U.S. at 252.  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."

Id. at 248.

The moving party bears the initial burden of showing that there are no genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Justice v. Crown Cork & Seal Co., 527 F.3d 1080, 1085 (10th Cir. 2008). Once the moving party meets its burden, the burden shifts to the nonmoving party to show that a genuine issue remains for trial with respect to the dispositive matters for which she carries the burden of proof. Nat'l Am. Ins. Co. v. Am. Re-Ins. Co., 358 F.3d 736, 739 (10th Cir. 2004); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). As to these matters, the nonmoving party may not rest on her pleadings but must set forth specific facts. Fed. R. Civ. P. 56(e)(2); Matsushita, 475 U.S. at 586-87; Justice, 527 F.3d at 1085. Conclusory allegations not supported by evidence are insufficient to establish a genuine issue of material fact. Jarvis v. Potter, 500 F.3d 1113, 1120 (10th Cir. 2007); see Kidd v. Taos Ski Valley, Inc., 88 F.3d 848, 853 (10th Cir. 1996).

When applying this standard, the Court must view the factual record in the light most favorable to the party opposing the motion for summary judgment. Duvall v. Ga.-Pac. Consumer Prods., L.P., 607 F.3d 1255, 1260 (10th Cir. 2010); see Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Liberty Lobby, 477 U.S. at 250-51. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

**Facts**

The following facts are uncontroverted.

Defendant is a professional association that operates a family practice medical clinic with four

offices in the Salina area. It employs approximately 23 family practice physicians and 70 to 75 nurses. The latter category includes registered nurses (RNs), licensed practical nurses (LPNs), medical assistants (MAs), certified medication aides (CMAs), certified nursing assistants (CNAs) and ward clerks. Either an RN or an LPN can work as head nurse for a physician at Comcare, and the CMAs, CNAs and ward clerks support the head nurses. Generally, each physician at Comcare has two support staff, either two nurses or one nurse and one aide.

Plaintiff worked as a nurse for various employers after she obtained her RN license in 1995. She began her employment with defendant in June of 2008, first working as a part-time nurse with various doctors on an as-needed basis. In October of 2008 she began working full time as the head nurse for Dr. Jocelyn Wolf, a new physician who was just starting her practice with Comcare. At the beginning of her practice, Dr. Wolf saw only one or two patients a day, but while plaintiff was working with her the patient load increased to approximately 12 to 14 a day. Although plaintiff had worked as a nurse for a number of years, her first clinical experience was at Comcare, and she acknowledged that patient care in a clinical setting is completely different from her previous work in acute care in a hospital.

Plaintiff received six-month and one-year reviews at Comcare. The first resulted in a recommendation for the maximum pay increase, and she received several favorable comments, such as: "Dr. Wolf is very happy with Pam, and states 'I can't imagine being teamed up with anyone else;'" "[s]he has done a very good job with asking questions of Dr. Wolf and other nurses, and looking things up, and doing whatever necessary to find answers;" and "I enjoy working with Pam, she is always calm, pleasant, considerate, and professional. I recommend the maximum percentage for pay increase and hope to keep her for a long time." Dr. Wolf evaluated plaintiff at 100 per cent on both her six-month evaluation and her annual evaluation, the latter of which did not occur until February of 2010.

Plaintiff's annual review also resulted in the maximum pay raise.  In that review Dr. Wolf wrote that "[plaintiff] is the nicest kindest person and treats people with respect even with the most difficult patients.  I would go on & on."

As part of her annual review in 2010, plaintiff completed a self-evaluation.  Cindy Vermillion, Comcare's director of nursing, recorded some notes under the "goals" section of that form.  These included making it to staff meetings, as it was better for plaintiff to attend than for Dr. Wolf's MA (Joey Smith) to do so; continuing improvements in chart flow and keeping Dr. Wolf on task to reduce the number of phone calls from patients; getting the next year's evaluation on time; and not eating lunch on the clock at her desk.  Comcare held monthly staff meetings over the noon hour, and because Dr. Wolf worked from 8:30 a.m. to 1:00 p.m., plaintiff had a difficult time breaking away from seeing patients to attend noon meetings.  Twice a month, drug representatives provided lunch for Comcare employees and Dr. Wolf directed plaintiff to get lunches for the two of them; plaintiff would then eat at her desk while working.

Within a couple of weeks of plaintiff's annual review, Vermillion held a counseling session with plaintiff and Dr. Wolf.  Other meetings followed.  The parties do not agree on what happened at those meetings, but it is apparent that defendant was trying to make Dr. Wolf's practice more efficient.  Defendant agrees that Vermillion gave plaintiff informal suggestions on how to make things run smoother in Dr. Wolf's office.  Plaintiff agrees that Vermillion gave plaintiff a list of time-saving ideas to encourage efficiency and followed up and made notes of her observations of plaintiff's progress. Defendant portrays Vermillion's involvement as giving direction; plaintiff portrays it as suggesting ideas that plaintiff had already implemented or unsuccessfully attempted.  Plaintiff lays the blame for inefficiency at Dr. Wolf's feet, while defendant lays the blame on plaintiff.  They also disagree about

other issues with respect to plaintiff's performance.[1] The parties also disagree whether plaintiff's absenteeism was excessive and how well Dr. Wolf's practice ran during a week in May of 2010 when plaintiff was on vacation. Defendant states that plaintiff's absence revealed multiple errors and made it clear that Dr. Wolf could practice more efficiently with a nurse other than plaintiff. Indeed, plaintiff's termination immediately followed her vacation.

On June 4, 2010, when plaintiff was 48 years old and a member of the protected age group, defendant terminated her employment and informed her that her termination was because of poor job performance. Plaintiff learned of her termination in a meeting with Vermillion and Duane Wedel, Comcare Director of Human Resources. When they told her that she was not efficient and never would be, plaintiff asked for training. Wedel and Vermillion denied her request. Plaintiff interpreted their response as tantamount to saying that you can't teach an old dog new tricks. Wedel and Vermillion told plaintiff that they did not know who would replace her, but that it would be someone with more experience. Defendant filled plaintiff's position with Kelsey Cunningham, a 26-year-old employee who had recently completed her degree and had become a registered nurse. Defendant had hired Cunningham as an LPN float nurse in June of 2008, most generally to cover for nurses who were ill or on vacation. Cunningham had filled in for plaintiff while she was on vacation the week before. Plaintiff states that on her return, she had to clean up Cunningham's errors in charting and scheduling and finish her uncompleted tasks. Plaintiff testified that throughout Comcare, it was known that Cunningham had special privileges with Wedel. Plaintiff had seen Cunningham sitting in Wedel's desk chair with her

---

[1] "Black and whites" are forms that Comcare nurses use to document telephone calls from patients. They place the forms in patient charts. Defendant found some "black and whites" in plaintiff's trash can. Plaintiff says that they were duplicates. Defendant disagrees, saying that they could not have been duplicates because the original forms did not appear in the corresponding patient charts and thus records of the patient telephone calls did not exist.

feet on his desk while Wedel sat across the desk in a guest chair. Plaintiff had rhetorically asked "what's wrong with this picture," and in response Cunningham and Wedel chuckled as plaintiff continued with her work. Plaintiff testified that Cunningham had accessed Wedel's email through his computer and sent an inappropriate email to all the nurses. Wedel testified that he recalled Cunningham sitting at his desk to use his computer to return an online purchase, and that he freely allowed employees to use his computer during break or lunch times.[2] Smith also testified that Cunningham received special treatment due to her relationship with Wedel.

Ultimately, the parties have very different views of the facts surrounding plaintiff's termination. Defendant's view is that Dr. Wolf became dissatisfied with plaintiff's performance and that despite Vermillion's efforts, plaintiff did not improve. Plaintiff denies notice that Dr. Wolf was unhappy, and points out that she received no written reprimand or counseling for poor job performance or any warning that her position was in jeopardy. Wedel testified that Comcare has a progressive discipline policy, but the record contains no evidence that it disciplined plaintiff in any manner before her termination. Plaintiff also denies that Cunningham was more qualified, and she points out that a younger employee who had documented performance issues was reassigned rather than terminated.

Plaintiff denies that defendant terminated her employment because Dr. Wolf was displeased with her performance. After her termination, Dr. Wolf apologized and offered to (and did) write a letter of recommendation on her behalf. Dr. Wolf also told plaintiff that she had been made to take the rap for a lot of things. Plaintiff asserts that Dr. Wolf herself was having absenteeism problems and was receiving counseling for various performance issues, and that Dr. Wolf's suspension from hospital privileges made plaintiff's job more difficult because the hospital would not allow her to schedule

---

[2] The record contains no evidence that other employees did so.

hospital procedures for patients during that time.  Plaintiff points to two instances that she believes indicate that Comcare terminated her because of her age: (1) Wedel and Vermillion commented that she was not efficient and never would be and they refused to offer her additional training; and (2) following her termination, Dr. Wolf told plaintiff that Comcare thought that plaintiff was "mothering" Dr. Wolf, and plaintiff interpreted that as a comment on her age.  Plaintiff also points out that she was replaced with someone who was 22 years younger and had within days obtained her RN license, while Comcare had told plaintiff that they would replace her with someone who was more qualified.  And although another younger nurse had been reassigned when her performance review was poor, plaintiff was summarily terminated with no warning that her performance was inadequate.

## **Analysis**

Plaintiff argues that defendant terminated her employment because of age and not because of poor performance.  Plaintiff may establish that defendant acted with discriminatory intent under the ADEA[3] and the Kansas Act Against Discrimination[4] either directly, through direct or circumstantial evidence, or indirectly, through the inferential burden-shifting scheme established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 824 (1973).  See Jones v. Okla. City Pub. Schs., 617 F.3d 1273, 1278-79 (10th Cir. 2010).[5]   Here, plaintiff relies on the indirect method of proving discrimination.

---

[3]     The ADEA prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).

[4]     The same standards and legal principles govern discrimination claims pursuant to the ADEA and the Kansas Act Against Discrimination.  Castleberry v. Boeing Co., 880 F. Supp. 1435, 1440 (D. Kan. 1995).

[5]     In Jones, the Tenth Circuit considered whether the McDonnell Douglas framework applied to ADEA claims after the Supreme Court's decision in Gross v. FBL Fin. Servs., Inc., 129 S. Ct. 2343 (2009).  It held that "Gross does not preclude our continued application of McDonnell
(continued...)

Under the McDonnell Douglas burden-shifting framework, plaintiff has the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802; Sanders v. Sw. Bell Tel., L.P., 544 F.3d 1101, 1105 (10th Cir. 2008) (quoting Sanchez v. Denver Pub. Sch., 164 F.3d 527, 531 (10th Cir. 1998)). If plaintiff satisfies her burden, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for terminating plaintiff's employment. McDonnell Douglas, 411 U.S. at 802-03; Sanders, 544 F.3d at 1105 (citing Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)). If defendant does so, the burden shifts back to plaintiff to show a genuine issue of material fact whether defendant's stated reason is pretextual, i.e. unworthy of belief. Sanders, 544 F.3d at 1105. If plaintiff so shows, she gets over the hurdle of summary judgment. Id. (quoting Morgan, 108 F.3d at 1323)).

To establish a prima facie case of age discrimination under the ADEA, plaintiff must show that (1) she is a member of the class protected by the ADEA; (2) she suffered an adverse employment action; (3) she was qualified for the position at issue; and (4) she was treated less favorably than others not in the protected class. See Jones, 617 F.3d at 1279. Defendant argues that plaintiff has not satisfied the third element of her ADEA claim. Defendant further argues that even if plaintiff has established a prima facie case of age discrimination, she has not established a genuine issue of material fact whether defendant's nondiscriminatory reason for termination is pretextual, i.e. not the real reason defendant terminated her employment. Here, defendant asserts that it terminated plaintiff's employment because she did not perform in a satisfactory manner. To survive summary judgment, plaintiff must establish a genuine issue of material fact whether defendant's reason is a pretext for age discrimination. See

---

[5](...continued)
Douglas to ADEA claims." Jones, 617 F.3d at 1278.

McDonnell Douglas, 411 U.S. at 802-03; Sanders, 544 F.3d at 1105.

To establish pretext, plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Jaramillo v. Colo. Judicial Dep't, 427 F.3d 1303, 1308 (10th Cir. 2005). In other words, she must produce evidence "that something more nefarious might be at play," not just that defendant "got it wrong." Johnson, 594 F.3d at 1211.

Plaintiff disputes the factual basis for her termination. She cites evidence, in the form of positive reviews and pay raises following each review, that she was performing in a fully satisfactory manner. She also cites evidence that, in spite of Wedel's testimony that Comcare utilizes progressive discipline, she received no warning that her performance was in any way insufficient. Plaintiff testified that Comcare penalized her for deficiencies in Dr. Wolf's performance, such as blaming her for failing to schedule procedures for patients when the hospital would not allow her to do so because it had suspended Dr. Wolf's privileges. She further asserts that Cunningham, who was 26 years old and newly licensed as an RN when defendant chose her to replace plaintiff, received special privileges from Comcare's Human Resources Director. Plaintiff also points out that, following her termination, Dr. Wolf stated that plaintiff had been made to take the rap for a lot of things.

The record reveals genuine issue of material fact concerning plaintiff's performance. The factual issue precludes any finding as a matter of law that plaintiff has not established a prima facie case of age discrimination. Similarly, a reasonable factfinder could rationally find that defendant's proffered reason for termination is unworthy of credence. Defendant therefore is not entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Accordingly, the Court overrules defendant's summary judgment motion.

**IT IS THEREFORE ORDERED** that defendant's Motion For Summary Judgment (Doc. #18) filed August 22, 2012 is **OVERRULED**.

Dated this 7th day of December, 2012 at Kansas City, Kansas.

            s/  Kathryn H. Vratil
            KATHRYN H. VRATIL
            United States District Judge